Docket No. 106511.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

_____

SUE CARTER, Special Adm'r of the Estate of Joyce Gott, Deceased, Appellee (Lisa Madigan, Attorney General of the State of Illinois, Intervenor-Appellee), v. SSC ODIN OPERATING COMPANY, LLC, d/b/a Odin Healthcare Center, Appellant.

*Opinion filed April 15, 2010*.

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Kilbride, Garman, and Burke concurred in the judgment and opinion.

Justices Freeman and Karmeier took no part in the decision.

**OPINION**

The narrow question presented in this case is whether the antiwaiver provisions of the Nursing Home Care Act (210 ILCS 45/3–606, 3–607 (West 2006)) are "grounds as exist at law or in equity for the revocation of any contract" within the meaning of section 2 of the Federal Arbitration Act (FAA) (9 U.S.C. §2 (2000)). The appellate court answered this question in the affirmative, finding that the antiwaiver provisions avoid the preemptive effect of the FAA on that basis. For the reasons that follow, we reverse the judgment of

the appellate court and remand the cause so that the appellate court may consider issues raised by the parties but not previously addressed.

BACKGROUND

Plaintiff, Sue Carter, is the special administrator of the estate of Joyce Gott. Defendant, SSC Odin Operating Company, LLC, is a nursing home located in Odin, Illinois, that does business as Odin Healthcare Center. Gott was a resident of defendant's nursing home from May 20, 2005, until July 29, 2005, and again from January 12, 2006, until her death on January 31, 2006. Plaintiff, acting as the legal representative of Gott, entered into a written "Health Care Arbitration Agreement" with defendant on May 20, 2005, upon Gott's initial admission. Gott herself signed a "Health Care Arbitration Agreement" six days after her second admission. Plaintiff's signature does not appear on this second agreement, and both agreements are comprised of the same, identical terms.

In both agreements, the parties agreed to submit to binding arbitration "all disputes with each other and their representatives arising out of or in any way related or connected to the Arbitration Agreement and all matters related thereto including matters involving the Resident's stay and care provided at the Facility." Specifically included within the scope of the agreements were "any disputes concerning whether any statutory provisions relating to the Resident's rights under Illinois law were violated." The agreements also stated that each party waived its right to a trial by jury, stating in all capital letters:

> "YOU CANNOT BE REQUIRED TO SIGN THIS AGREEMENT IN ORDER TO RECEIVE TREATMENT, BY SIGNING THIS AGREEMENT, YOUR RIGHT TO TRIAL BY JURY OR A JUDGE IN COURT WILL BE BARRED AS TO ANY DISPUTE RELATING TO INJURIES THAT MAY RESULT FROM NEGLIGENCE DURING YOUR TREATMENT OR CARE, AND WILL BE REPLACED BY AN ARBITRATION PROCEDURE.

> THIS AGREEMENT PROVIDES THAT ANY CLAIM WHICH MAY ARISE OUT OF YOUR HEALTH CARE WILL BE SUBMITTED TO A PANEL OF

ARBITRATORS, RATHER THAN TO A COURT FOR DETERMINATION. THIS AGREEMENT REQUIRES ALL PARTIES SIGNING IT TO ABIDE BY THE DECISION OF THE ARBITRATION PANEL."

The agreements further stated, however, that they do not apply to "any dispute where the amount in controversy is less than *** $200,000." The parties also agreed that the resident or legal representative would have a right to rescind the agreement within 30 days of signing and that the execution of the agreement was not a precondition for admission to the facility. The agreements additionally provided that defendant would pay all arbitrator fees and up to $5,000 in reasonable "attorney fees and costs for the Resident in any claims against the Facility." Finally, the agreements noted that they were governed by the FAA and that if any portion was determined invalid or unenforceable, the remainder of the terms would continue to be binding.

Following Gott's death, plaintiff filed a two-count complaint in the circuit court of Marion County against defendant. Count I was a statutory survival claim that alleged violations of the Nursing Home Care Act (210 ILCS 45/2–107, 1–117 (West 2006)) and regulations promulgated by the Illinois Department of Public Health pursuant to that Act. Count II was a statutory action under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)). In both counts, plaintiff alleged that defendant had failed to provide adequate and properly supervised care as needed by Gott. In count I, plaintiff alleged that defendant's acts and omissions resulted in Gott suffering injuries between January 12, 2006, and January 31, 2006, during Gott's second stay at the facility. In the wrongful-death count, plaintiff alleged that defendant's acts and omissions resulted in Gott's death and therefore the loss of companionship and society for her heirs.

Defendant filed an answer to the complaint, denying the allegations therein and asserting various affirmative defenses, including that both counts of the lawsuit were precluded by the arbitration agreements that were signed by Gott and plaintiff. Later, defendant filed a motion to compel arbitration, relying on section 2 of the FAA, which provides in relevant part as follows:

> "A written provision in *** a contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000).

Defendant attached to his motion a memorandum of law, a copy of each of the agreements, and the affidavit of Mary Ann Smith, defendant's chief administrator, setting forth facts that allegedly established that the arbitration agreements involved interstate commerce within the meaning of section 2 of the FAA.

Plaintiff filed a memorandum of law (and supplement) in opposition to the motion to compel arbitration, arguing, among other things, that the agreements were in violation of the public policy of this state, as expressed in sections 3–606 and 3–607 of the Nursing Home Care Act, and were therefore void. Section 3–606 of the Act provides that "[a]ny waiver by a resident or his legal representative of the right to commence an action under Sections 3–601 through 3–607, whether oral or in writing, shall be null and void, and without legal force or effect." 210 ILCS 45/3–606 (West 2006). Section 3–607 of the Act provides that "[a]ny party to an action brought under Sections 3–601 through 3–607 shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to commencement of an action, shall be null and void, and without legal force or effect." 210 ILCS 45/3–607 (West 2006). Plaintiff contended that the public policy behind the antiwaiver provisions of sections 3–606 and 3–607 is a generally applicable defense to all contracts in Illinois and therefore that policy is a "grounds as exist at law *** for the revocation of any contract" sufficient to negate FAA preemption. See 9 U.S.C. §2 (2000). Plaintiff also raised three additional contentions in her effort to avoid arbitration: (1) the FAA did not apply because the arbitration agreements did not involve interstate commerce; (2) the agreements were void for a lack of a mutual obligation to arbitrate; and (3) because she did not sign the second arbitration agreement, she could not be compelled to arbitrate.

The circuit court denied the motion to compel arbitration without an evidentiary hearing. First, the court found that with respect to the wrongful-death claim, the right to proceed to recovery through arbitration is considered a "right of action." Thus, even if Gott would have had to proceed to arbitration had she lived and wanted to recover for her injuries, she nonetheless still had a "cause of action." According to the circuit court, although Gott was bound by the agreements for her own claims, a plaintiff bringing claims on behalf of the estate is not bound by the agreements. Second, with respect to the survival count, the court found that the claim was valid because the arbitration agreement was "unenforceable both because it is in direct violation of emphatically stated public policy and for lack of mutuality." Finally, the circuit court seemed to be addressing whether the transaction involved "interstate commerce" within the meaning of the FAA when it made the following finding:

> "Further, the underlying contractual relationship was between an elderly Marion County resident and a Marion County care facility. The contract was for personal care within this county. The action relates to the care provided. The statute involved here is a public safety statute that affects the relationships between the contracting parties. This trial court believes that in the aggregate the economic activity does not represent general practice subject to federal control."

The appellate court affirmed the circuit court's decision, but did so on the basis of a single question of law–whether the "public policy" expressed in the Nursing Home Care Act was an ordinary state-law contract defense applicable to all contracts, and thus beyond the preemptive effect of the FAA. 381 Ill. App. 3d 717, 721. The appellate court found that sections 3–606 and 3–607 embodied a public policy that applied to all contracts generally and did not "specifically target arbitration." 381 Ill. App. 3d at 722-23. The court concluded that this public policy was a legitimate contract defense within the language of section 2 of the FAA (*i.e.*, "save upon such grounds as exist at law or equity for the revocation of any contract") that can void an arbitration agreement. In reaching this conclusion, the court found defendant's reliance upon *Perry v. Thomas*, 482 U.S. 483, 96 L. Ed. 2d 426, 107 S. Ct. 2520 (1987), and *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 134 L. Ed. 2d 902, 116

-5-

S. Ct. 1652 (1996), to be misplaced because the antiwaiver provisions in the Nursing Home Care Act do not specifically mention arbitration, and also because, under the Illinois statute, a contract that does not mention arbitration but requires a bench trial would be voided to the same extent as a contract requiring arbitration. 381 Ill. App. 3d at 722.

This court initially denied defendant's petition for leave to appeal on September 24, 2008. Defendant then filed a petition for a writ of *certiorari* in the United States Supreme Court. There, defendant argued that the appellate court misread the holdings of *Perry* and *Casarotto*, and that its decision conflicted with *Preston v. Ferrer*, 522 U.S. 346, 169 L. Ed. 2d 917, 128 S. Ct. 978 (2008), and *Southland Corp. v. Keating*, 465 U.S. 1, 79 L. Ed. 2d 1, 104 S. Ct. 852 (1984), as well as with the holdings in four federal circuits. In its brief in opposition to the motion for a writ of *certiorari*, plaintiff argued that the intermediate nature of the appellate court's decision was a factor that weighed against allowing the petition. Plaintiff noted the possibility that a conflict could arise among panels of the Illinois appellate court on the issue, thereby requiring resolution by the Illinois Supreme Court. Therefore, plaintiff asserted, the United States Supreme Court, as a court of last resort, should not grant *certiorari* because the issue has not been finally settled by Illinois in the absence of a decision by the Illinois Supreme Court. On May 8, 2009, shortly after plaintiff filed her brief in opposition to the writ, the Illinois Appellate Court, Second District, filed *Fosler v. Midwest Care Center II, Inc.*, 391 Ill. App. 3d 397 (2009), which held that the FAA preempted the antiwaiver provisions of the Nursing Home Care Act.[1] *Fosler* expressly rejected the contrary holding of the Fifth District in the present case. *Fosler*, 391 Ill. App. 3d at 399 (found that *Carter* was wrongly decided and could not be reconciled with *Perry*). Defendant's petition for a writ of *certiorari* was denied on June 1, 2009.

Citing a conflict between the Second District's decision in *Fosler*

---

[1]We note that subsequent to the release of this published opinion in *Fosler*, the Second District, on March 1, 2010, filed a modified opinion upon denial of rehearing. It did not, however, revise its previous holding.

and the Fifth District's decision in this case, defendant filed a motion in this court for reconsideration of the denial of its petition for leave to appeal. On August 7, 2009, this court granted defendant's motion and allowed the petition for leave to appeal. 210 Ill. 2d R. 315. We exercise jurisdiction in this case pursuant to our supervisory authority over the Illinois court system. See Ill. Const. 1970, art. VI, §16; *In re Estate of Funk*, 221 Ill. 2d 30, 97-98 (2006); *People v. Lyles*, 217 Ill. 2d 210, 216 (2005) (our supervisory authority is a broad and unlimited power that grants jurisdiction without need to articulate its instruments or agencies). We also allowed the Attorney General of the State of Illinois leave to intervene as an additional appellee. 735 ILCS 5/2–408(c) (West 2008). For the reasons that follow, we reverse the judgment of the appellate court on the issue that it addressed, and we remand the cause to the appellate court so that it may consider and decide issues not reached by it previously. See *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 172 (1997).

## ANALYSIS

At the outset, we note that the appellate court did not consider the question of whether the parties' agreement evidenced "a transaction involving commerce" within the meaning of the FAA (9 U.S.C. §2 (2000)), and it is not entirely clear that the circuit court reached this issue either. We assume *arguendo* that the transaction satisfied the interstate commerce requirement of the FAA, but this is an issue that should be addressed by the appellate court on remand.

We now turn to the sole issue addressed by the appellate court–whether the antiwaiver policy expressed in the Nursing Home Care Act is a generally applicable contract defense that negates FAA preemption. Questions of federal preemption and statutory interpretation present questions of law that are subject to *de novo* review. *Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210*, 231 Ill. 2d 184, 194 (2008).

The preemption doctrine is derived from the supremacy clause of article VI of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land *** any Thing in the Constitution or Laws of any State to the Contrary

notwithstanding." U.S. Const., art. VI, cl. 2. Thus, state law is null and void if it conflicts with federal law. *Sprietsma v. Mercury Marine*, 197 Ill. 2d 112, 117 (2001).

Federal law preempts state law under the supremacy clause in any one of the following three circumstances: (1) express preemption–where Congress has expressly preempted state action; (2) implied field preemption–where Congress has implemented a comprehensive regulatory scheme in an area, thus removing the entire field from the state realm; or (3) implied conflict preemption–where state action actually conflicts with federal law. *Sprietsma*, 197 Ill. 2d at 117. The key inquiry in any preemption analysis is to determine the intent of Congress. *City of Chicago v. Comcast Cable Holdings, L.L.C.*, 231 Ill. 2d 399, 405 (2008).

In the present case, only conflict preemption is at issue. This is because the FAA contains no express preemption provision, and it does not indicate a congressional intent to occupy the entire field of arbitration. *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 477, 103 L. Ed. 2d 488, 499, 109 S. Ct. 1248, 1255 (1989). Thus, state law is preempted by the FAA to the extent that it actually conflicts with state law, that is, to the extent that it " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Volt Information Sciences*, 489 U.S. at 477, 103 L. Ed. 2d at 499, 109 S. Ct. at 1255, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404 (1941). This inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied and not simply as they are written. *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305, 1310 (1977). Moreover, it is well settled that uniformity of decision is an important consideration when state courts interpret federal statutes, and we will give "considerable weight" to the decisions of federal courts that have addressed preemption under section 2 of the FAA. See *Sprietsma*, 197 Ill. 2d at 120 (citing *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 422 (1999), *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 383 (1999), and *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335 (1996)). We also recognize that decisions of the United States Supreme Court addressing FAA preemption are binding on this court.

See *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91 (2005).

The basic purpose of the FAA is to overcome the historical reluctance of courts to enforce agreements to arbitrate. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270, 130 L. Ed. 2d 753, 762, 115 S. Ct. 834, 838 (1995). When Congress passed the FAA in 1925, it intended courts to enforce agreements by parties to arbitrate and to place such agreements on the same footing as other contracts. *Allied-Bruce*, 513 U.S. at 270-71, 130 L. Ed. 2d at 762, 115 S. Ct. at 838. A state statute stands as an obstacle to the purposes of the FAA if it targets arbitration provisions for disfavored treatment not applied to other contractual terms generally. *Allied-Bruce*, 513 U.S. at 281, 130 L. Ed. 2d at 769, 115 S. Ct. at 843. Similarly, state provisions form an obstacle if they "take their meaning from the fact that a contract to arbitrate is at issue, or frustrate arbitration, or provide a defense to it." *Securities Industry Ass'n v. Connolly*, 883 F.2d 1114, 1123 (1st Cir. 1989).

Here, defendant argues that the appellate court misconstrued the United States Supreme Court's decisions in *Perry* and *Casarotto*, and failed to consider the more factually and analytically pertinent decisions of *Southland Corp. v. Keating*, 465 U.S. 1, 79 L. Ed. 2d 1, 104 S. Ct. 852 (1984), and *Preston v. Ferrer*, 552 U.S. 346, 169 L. Ed. 2d 917, 128 S. Ct. 978 (2008). We agree.

Over 25 years ago, in *Southland*, the Supreme Court first held that the FAA applies in state as well as federal court and preempts conflicting state laws. *Southland*, 465 U.S. at 16, 79 L. Ed. 2d at 15, 104 S. Ct. at 861. *Southland* involved a provision of the California Franchise Investment Law that provided that " '[a]ny condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void.' " *Southland*, 465 U.S. at 10, 79 L. Ed. 2d at 11, 104 S. Ct. at 858, quoting Cal. Corp. Code Ann. §31512 (West 1977). The California Supreme Court interpreted this statute to require judicial consideration of claims brought under it and therefore refused to enforce the parties' contract to arbitrate such claims. *Southland*, 465 U.S. at 10, 79 L. Ed. 2d at 11, 104 S. Ct. at 858. In reversing the California Supreme Court, the United States Supreme Court began its analysis by noting "a national policy favoring

arbitration" that withdrew the power of the states to "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland*, 465 U.S. at 10, 79 L. Ed. 2d at 12, 104 S. Ct. at 858. In holding that the California law violated the supremacy clause, the Court found that Congress "intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland*, 465 U.S. at 16, 79 L. Ed. 2d at 15, 104 S. Ct. at 861. Finally, the majority in *Southland* addressed the partial dissent of Justice Stevens, which relied on the fact that section 2 of the FAA "permits a party to nullify an agreement to arbitrate on 'such grounds as exist at law or in equity for the revocation of any contract.' " *Southland*, 465 U.S. at 16 n.11, 79 L. Ed. 2d at 15 n.11, 104 S. Ct. at 861 n.11. In that regard, the majority stated as follows:

> "We agree, of course, that a party may assert a general contract defenses such as fraud to avoid enforcement of an arbitration agreement. We conclude, however, that the defense to arbitration found in the California Franchise Investment Law is not a ground that exists at law or in equity 'for the revocation of *any* contract' but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law. Moreover, under this dissenting view, 'a state policy of providing special protection for franchisees ... can be recognized without impairing the basic purposes of the federal statute.' *Post*, at 21. If we accepted this analysis, states could wholly eviscerate congressional intent to place arbitration agreements 'upon the same footing as other contracts,' H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924), simply by passing statutes such as the Franchise Investment Law. We have rejected this analysis because it is in conflict with the [FAA] and would permit states to override the declared policy requiring enforcement of arbitration agreements." (Emphasis in original.) *Southland*, 465 U.S. at 16 n.11, 79 L. Ed. 2d at 15 n.11, 104 S. Ct. at 861 n.11.

The Supreme Court next considered FAA preemption in *Perry*, holding that section 2 of the FAA, "which mandates enforcement of arbitration agreements, pre-empts §229 of the California Labor Code, which provides that actions for the collection of wages may be

maintained 'without regard to the existence of any private agreement to arbitrate.' " *Perry*, 482 U.S. at 484, 96 L. Ed. 2d at 432, 107 S. Ct. at 2522-23, quoting Cal. Lab. Code Ann. §229 (West 1971). The Court began its analysis by strongly emphasizing that section 2 of the FAA embodied a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Perry*, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525 (court also stated that section 2 "declared a national policy favoring arbitration" and is a "clear federal policy of requiring arbitration"). The Court addressed the viability of general, state-contract-law defenses, like unconscionabilty, to attack agreements to arbitrate. The Court noted that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement ***." (Emphasis in original.) *Perry*, 482 U.S. at 492 n.9, 96 L. Ed. 2d at 437 n.9, 107 S. Ct. at 2527 n.9. The Court continued that courts may not construe arbitration agreements differently from what it would otherwise construe nonarbitration agreements, nor may they "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Perry*, 482 U.S. at 492 n.9, 96 L. Ed. 2d at 437 n.9, 107 S. Ct. at 2527 n.9.

In *Casarotto*, the Court was faced with a Montana statute that declared an arbitration clause unenforceable unless " '[n]otice that [the] contract is subject to arbitration' is 'typed in underlined capital letters on the first page of the contract.' " *Casarotto*, 517 U.S. at 683, 134 L. Ed. 2d at 906, 116 S. Ct. at 1654, quoting Mont. Code Ann. §27–5–114(4) (1995). The Court had no trouble holding that the state enactment conflicted with the FAA and was therefore displaced by the federal law. *Casarotto*, 517 U.S. at 683, 134 L. Ed. 2d at 906, 116 S. Ct. at 1654. *Casarotto* reiterated the principles set forth in *Southland* and *Perry*. It then concluded that the Montana statute was preempted because it "places arbitration agreements in a class apart from 'any contract,' and singularly limits their validity." *Casarotto*, 517 U.S. at 688, 134 L. Ed. 2d at 910, 116 S. Ct. at 1657.

The Supreme Court most recently addressed FAA preemption in

-11-

*Preston.* There, the Court held that the FAA allows parties to choose an arbitral forum to decide their disputes and that the FAA supersedes any state law that lodges primary jurisdiction in another forum, whether judicial or administrative. *Preston*, 552 U.S. at 349-50, 169 L. Ed. 2d at 923, 128 S. Ct. at 981. The parties in *Preston* had agreed to arbitrate disputes that might arise under a management contract. Preston claimed that he was owed fees as a personal manager under the contract, but Ferrer claimed the contract was void because Preston was acting as an unlicensed talent agent in violation of a state statute. Following the procedures prescribed by state law, Ferrer petitioned the state labor commissioner to decide whether the contract was enforceable because it violated a law requiring the licensing of talent agents. Like the Illinois Nursing Home Care Act, the statute at issue in *Preston* did not mention arbitration, stating: "In cases of controversy arising under this chapter, the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo." *Preston*, 552 U.S. at 355, 169 L. Ed. 2d at 926, 128 S. Ct. at 985, quoting Cal. Lab. Code Ann. §1700.44 (West 2003). The dispute eventually found its way to state superior court, where Preston moved to compel arbitration, but the court refused his request because it believed the FAA did not preempt actions before an administrative agency with exclusive jurisdiction over the dispute. The California Court of Appeal affirmed. The Supreme Court of the United States reversed, stating that the issue was simply "who decides whether Preston acted as personal manager or as talent agent." *Preston*, 552 U.S. at 352, 169 L. Ed. 2d at 925, 128 S. Ct. at 983. The Court found that the motion to compel arbitration raised solely the question of which forum would hear the parties' dispute and that the parties had not lost any substantive rights under the statute. *Preston*, 552 U.S. at 359, 169 L. Ed. 2d at 929, 128 S. Ct. at 987. In other words, the parties had not waived causes of action under the statute; instead, they had agreed *who* would decide such issues, and that "who" was an arbitrator.

We believe that the antiwaiver provisions of the Nursing Home Care Act relied upon by the plaintiff are legally indistinguishable from the provisions struck down by the Supreme Court in *Southland*, *Perry*

-12-

and *Preston*. Here, just like the statutes in *Southland* and *Preston*, the Illinois statute required resolution of the dispute in a non-arbitral forum. Moreover, neither of the actual statutory provisions invalidated in *Southland* and *Preston* even mention arbitration. The appellate court erroneously believed that the Nursing Home Care Act had to specifically "target" or single out arbitration agreements for FAA preemption to apply. This is a misreading of *Perry* and *Casarotto*.

To be sure *Perry* and *Casarotto* do stand for the proposition that section 2 of the FAA preempts those state laws that "single out" arbitration agreements for special treatment. *Southland* and *Preston*, however, demonstrate that *Perry* and *Casarotto* cannot be read to stand for the converse proposition that state laws avoid FAA preemption so long as they do not "single out" arbitration agreements for special treatment. Instead, *Southland* and *Preston* make clear that state statutes are preempted by the FAA if the statutes as applied preclude the enforcement of federally protected arbitration rights, regardless of whether the state statutes specifically target arbitration agreements. The statutes involved in *Southland* and *Preston* did not single out or target arbitration agreements explicity, as the statute in *Southland* required "judicial consideration" of claims brought under it (*Southland*, 465 U.S. at 10, 79 L. Ed. 2d at 11, 104 S. Ct. at 858), and the statute in *Preston* simply placed jurisdiction of labor disputes with an administrative agency (*Preston*, 552 U.S. at 351, 169 L. Ed. 2d at 924, 128 S. Ct. at 982; Cal. Lab. Code Ann. §1700.44 (West 2003)).[2]

Similarly, any distinction between the antiwaiver provisions of the Nursing Home Care Act and the statute at issue in *Perry* is inconsequential. *Perry*, 482 U.S. at 484, 96 L. Ed. 2d at 432, 107 S.

---

[2]The State, as intervenor, contends that *Preston*'s holding was dependent on the conclusion that another provision within the California statutory scheme "singled out arbitration for unique restrictions." The State's argument, however, seeks to impose a limitation on *Preston* that is not supported by the clear language of that decision. *Preston* found that both statutory provisions were preempted by the FAA, giving no indication that its holding with respect to the first statutory section was dependent on the Court's holding with respect to the second statutory section. *Preston*, 552 U.S. at 356, 169 L. Ed. 2d at 927, 128 S. Ct. at 985.

Ct. at 2522-23 (providing a judicial forum for labor disputes " 'without regard to the existence of any private agreement to arbitrate' "), quoting Cal. Lab. Code Ann. §229 (West 1971). As the appellate court in *Fosler* noted, the California statute in *Perry* operated no differently than sections 3–606 and 3–607 of the Nursing Home Care Act. See *Fosler*, 391 Ill. App. 3d at 407. With or without the mention of arbitration, the California statute still guaranteed that a judicial action for a wage dispute could be maintained. Inclusion of the "phrase 'without regard to the existence of any private agreement to arbitrate' does not mean that the statute applies only when there is an agreement to arbitrate." See *Fosler*, 391 Ill. App. 3d at 407. Thus, just like the Illinois provisions, the California statute provided a plaintiff with a judicial forum regardless of whether the contract mandated arbitration. See *Fosler*, 391 Ill. App. 3d at 407.

The appellate court's interpretation in the present case also conflicts with the plain language of section 2 of the FAA, which permits voiding of an arbitration agreement only on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000). State laws that are applicable to arbitration contracts and some other types of contracts, but not all contracts, are not "grounds *** for the revocation of *any* contract." See, *e.g.*, *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 890 (9th Cir. 2001) (California statute preempted because it applies only to forum-selection clauses and only to franchise agreements, and therefore it does not apply to "any contract"); *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 447 (5th Cir. 2001) (Louisiana statute invalidated because it conditioned arbitration agreement's enforceability on a Louisiana forum, a requirement not applicable to contracts generally); *Doctor's Associates, Inc. v. Hamilton*, 150 F.3d 157, 163 (2d Cir. 1998) (New Jersey case law invalidated because it applied to "one sort of contract provision (forum selection) in only one type of contract (a franchise agreement)," and so was preempted by the FAA); *KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50-51 (1st Cir. 1999) (Rhode Island statute was not a generally applicable contract defense because it applied to only one type of provision, venue clauses, in one type of agreement, franchise agreements); see also C. Drahozal, *Federal Arbitration Act Preemption*, 79 Ind. L.J. 393, 409 (2004), citing *Allied-Bruce*, 513

U.S. at 281, 130 L. Ed. 2d at 769, 115 S. Ct. at 843, citing 9 U.S.C. §2 (1994). Here, the antiwaiver provisions of the Nursing Home Care Act purport to invalidate arbitration agreements in a specific type of contract–those involving nursing care–and for that reason alone they are not a defense generally applicable to "any contract."

The appellate court found it important that "a contract that never mentions arbitration but instead requires a bench trial *** rather than a trial by a jury, would be voided by *** sections [3–606 and 3–607] to the same extent as a contract containing an arbitration agreement." 381 Ill. App. 3d at 722. But we do not find that this fact requires a different result. The Illinois enactments at issue are merely pro-judicial forum legislation that is the "functional equivalent" of antiarbitration legislation, which is preempted by the FAA and the holding in *Southland*. See *Fosler*, 391 Ill. App. 3d at 407. The California Supreme Court in *Southland* held that the antiwaiver provision in that case precluded the arbitration of disputes under the state statute (*Southland*, 465 U.S. at 17, 79 L. Ed. 2d at 15-16, 104 S. Ct. at 861), but it did not purport to limit the reach of the statute to arbitration agreements. To the contrary, antiwaiver provisions in such statutes have been applied in California and elsewhere to invalidate a wide variety of contract provisions in addition to arbitration clauses. See 79 Ind. L.J. at 409 (collecting cases). Thus, *Southland* essentially held that state laws that may apply to more than arbitration clauses are nonetheless preempted. Application of the "singling out" theory in such cases would be nothing more than a "backdoor attempt to have the Supreme Court overrule *Southland*, which it already has refused to do." 79 Ind. L.J. at 410, citing *Allied-Bruce*, 513 U.S. at 272, 130 L. Ed. 2d at 763, 115 S. Ct. at 838-39.

Finally, we reject the State's argument that the FAA should not be read to preempt state provisions precluding the waiver of jury trials because the right to a jury trial is a fundamental constitutional right and jury trial guarantees do not "single out" arbitration clauses for elimination. There are a number of problems with the State's argument. First, we note that it is axiomatic that a party may waive the right to a trial by jury in a civil case by entering into a contract to arbitrate. See, *e.g.*, *Sherwood v. Marquette Transportation Co.*, 587 F.3d 841, 842 (7th Cir. 2009), citing *Carbajal v. H&R Block Tax Services, Inc.*, 372 F.3d 903, 905-06 (7th Cir. 2004). Moreover,

Illinois public policy favors arbitration as a means of dispute resolution, generally (710 ILCS 5/2(a) (West 2006)), but sections 3–606 and 3–607 assert a contrary public policy affording nursing home residents a judicial forum, including the right to a jury trial in a dispute with a nursing home. As the appellate court in *Fosler* noted, the incongruity illustrates why sections 3–606 and 3–607 did not " 'ar[i]se to govern issues concerning the validity, revocability, and enforceability of contracts *generally*.' " (Emphasis in original.) *Fosler*, 391 Ill. App. 3d at 409-10, quoting *Perry*, 482 U.S. at 492 n.9, 96 L. Ed. 2d at 437 n.9, 107 S. Ct. at 2527 n.9. The State's argument ignores the fact that the jury-trial requirement does not apply to all contracts generally, but only to nursing home contracts. Second, if the State's argument were accepted, it would mean that all arbitration agreements sought to be enforced in Illinois would be invalid, given that the requirement would have to apply to "all contracts" to avoid FAA preemption. Such a construction would wholly eviscerate arbitration agreements and would conflict with and override the declared federal policy requiring enforcement of arbitration agreements. By definition arbitration contracts call for an arbitrator, rather than a jury, to resolve the parties' dispute. In sum, we simply do not believe that this is the kind of defense Congress had in mind when it provided for a defense to preemption based on "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000). Rather, the purpose of this savings clause is to preserve general contract defenses such as lack of mutuality, lack of consideration, fraud, duress, unconscionability, and the like, that can truly apply to any contract.

CONCLUSION

For the foregoing reasons, we hold that the public policy behind the antiwaiver provisions of sections 3–606 and 3–607 of the Nursing Home Care Act are not "grounds as exist at law or in equity for the revocation of any contract" within the meaning of section 2 of the FAA (9 U.S.C. §2 (2000)). The parties raise a number of other issues before this court, including whether the parties arbitration agreement evince a transaction "involving [interstate] commerce" within the meaning of section 2 of the FAA. See 9 U.S.C. §2 (2000). Because the appellate court erroneously determined that the public policy

behind the Nursing Home Care Act's antiwaiver provisions was a valid, general contract defense to FAA preemption, it did not consider any other issues in the case. As such, it is appropriate for this court to remand the cause to the appellate court for consideration and resolution of the remaining issues. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 619 (2008); *Schwartz*, 177 Ill. 2d at 184. Accordingly, we reverse the judgment of the appellate court and remand the cause to the appellate court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*cause remanded.*

JUSTICES FREEMAN and KARMEIER took no part in the consideration or decision of this case.