# Illinois Official Reports

## Supreme Court

---

### *In re Marriage of Mueller*, 2015 IL 117876

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF SHELLEY L. MUELLER, Appellee, and CHRISTOPHER MUELLER, Appellant. |
| Docket No. | 117876 |
| Filed | June 18, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. John M. Madonia, Judge, presiding. |
| Judgment | Appellate court judgment affirmed; <br> Circuit court judgment affirmed; <br> Cause remanded. |
| Counsel on Appeal | William F. Moran III, of Stratton, Moran, Sronce, Reichert & Nardulli, of Springfield, for appellant. <br><br> Michelle L. Blackburn and Emily A. Reid-Peterson, of Sorling Northrup, of Springfield, for appellee. |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. <br> Chief Justice Garman and Justices Freeman, Thomas, and Kilbride concurred in the judgment and opinion. <br> Justice Burke dissented, with opinion, joined by Justice Karmeier. |

**OPINION**

¶ 1        The central issue in this divorce case is one that we declined to answer in *In re Marriage of Crook*, 211 Ill. 2d 437, 452 (2004)—namely, whether a spouse who participates in a government pension program in lieu of Social Security must be placed in a position similar to the other spouse who participates in Social Security and whose benefits under that program are exempt by federal law from equitable distribution under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act). See 750 ILCS 5/503(d) (West 2012).

¶ 2        Here, the circuit court of Sangamon County refused to decrease the value of respondent Christopher Mueller's municipal police pension by the value of hypothetical Social Security benefits that he is not entitled to receive as a nonparticipant in that program. The appellate court affirmed the trial court's decision. 2014 IL App (4th) 130918-U. For the reasons that follow, we affirm, as well.

¶ 3                                          BACKGROUND

¶ 4        Shelley and Christopher Mueller were married in 1992. Shelley works for a private sector company, and has Social Security tax withheld from her pay. She expects to receive full Social Security benefits in 2033 at age 67. Christopher works for the Springfield police department as an officer and does not have Social Security tax withheld from his pay. Instead, he contributes to the Springfield Police Pension Fund and he can retire with full pension benefits in 2017 at age 50.

¶ 5        In 2012, Shelley filed a divorce petition. The following year, the trial court held a hearing on the petition. Christopher offered a report from Sheila Mack, owner of Equitable Solutions, a self-described "pre-divorce planning" business. Mack's report stated that she computed the estimated present value of Christopher's pension benefits, but, in doing so, used a "Windfall Elimination Provision" or WEP. She explained:

> "Participants in the Springfield Police Pension Fund do not pay into Social Security. Because of the ruling by the Illinois Supreme Court regarding Social Security benefits in divorce [presumably, *Crook*], the question becomes how to place Mr. Mueller in a position similar to Mrs. Mueller whose Social Security benefits are exempt from equitable distribution[.] In other words, what portion of Mr. Mueller's monthly benefit would he receive 'in lieu of' Social Security?"

¶ 6        That portion was derived from figures Mack generated with "Social Security's Online Calculator." She input Christopher's wages through August 2012, as if they were "covered by Social Security," and determined that his monthly Social Security benefit at age 67 would be $1,778 per month. She then input his wages "for only those years in which he contributed to Social Security," and determined that his monthly benefit at age 67 would be $230 per month. The difference of $1,548 per month was what Mack posited as "the dollar amount Mr. Mueller would receive 'in lieu of' Social Security," or his "WEP offset." And the difference between that amount and the amount he would receive from his pension was $2,479 per month, which yielded an estimated present value of $639,720.74.[1]

_____

[1]Mack's report also outlined another method for calculating the so-called "in lieu of" portion of his pension benefit, in which she compared Christopher to "a regular IMRF employee who pays into Social

- 2 -

¶ 7    At the hearing, Mack's testimony largely echoed the contents of her report. She stated that Social Security benefits are no longer "divisible" in divorce proceedings, pursuant to federal law. According to Mack, the "Social Security Administration has acknowledged that part of the pension for a person who doesn't contribute to Social Security is in lieu of Social Security[ ] because they instituted two Social Security offsets." Mack did not further describe those offsets, and when Christopher's attorney asked her to describe the goal of an offset, Shelley's attorney made an objection to Mack's report because the valuation method proposed there was contrary to *Crook*. Christopher's attorney discussed that case briefly, and asserted that it left "wide open" the issue of whether that method comported with federal law.

¶ 8    The trial court reviewed *Crook* and sustained the objection. The court noted that this court, "while acknowledging the unfairness of this process, is pretty intent on keeping this Social Security benefit out of the pension, and basically the overall analysis of the marital estate." Thus, the valuation method proposed by Mack is "an offset by any other language" and violates federal law as interpreted by *Crook*. Although the trial court declined to weigh Mack's report in its decision to divide property, it allowed Christopher's attorney to examine Mack to create an offer of proof for purposes of appeal.

¶ 9    Mack outlined how she used the Social Security Administration's website to find, based on Christopher's earnings history, what his Social Security benefit would be if he had participated in that program. Mack asserted that the present value of his pension, minus the Social Security benefit that she calculated for him, was the same figure in her report, $639,720.74. The marital portion of that figure was $614,323.83, and the nonmarital portion was $25,396.91.

¶ 10   On cross-examination, Shelley's attorney asked Mack more about how she arrived at those figures. Mack stated that because Christopher has served as a police officer for 20 years, he could retire with full pension benefits at age 50. The present value was based on that scenario. Shelley's attorney then asked Mack about the effect of Christopher obtaining a subsequent, postretirement job, at which Social Security tax would be withheld, until age 67. Mack conceded that he would be entitled to Social Security benefits, but because he would lack 20 years of what the Internal Revenue Service calls "substantial earnings," there would be an offset. This offset, likely one of the two mentioned by Mack earlier in the hearing, serves to decrease Social Security benefits for people who have not participated in the program for a large part of their working lives. According to Mack, Christopher had only three years of substantial earnings before joining the Springfield police department, so his Social Security benefit at age 67 would be reduced by 55%, from $517 per month to $230 per month. Mack could offer no opinion on whether Shelley would suffer any detriment because Christopher did not pay into Social Security.

¶ 11   At the close of evidence, the trial court ruled that Christopher could amend his calculations consistent with its ruling on the objection to Mack's report. Christopher filed a closing written argument, where he stated that Mack recalculated the present value of his pension benefits "without the Social Security offset" as $991,830.[2] The court adopted that figure, and

Security." That method yielded a present value of $732,361.74, but that amount was never addressed at the hearing.

[2]Shelley also offered her own present value figure, which she arrived at using software called "FinPlan" and a lower interest rate than Mack. According to Shelley, the present value of Christopher's pension was $1,306,805. The trial court rejected that figure and used the one provided by Mack.

- 3 -

ultimately awarded Shelley slightly more than 35% of Christopher's pension, or $350,000. Christopher appealed.

¶ 12    A divided panel of the appellate court affirmed the trial court's decision. 2014 IL App (4th) 130918-U. The appellate court majority discussed *Crook*, and the question it left for another day, then discussed *In re Marriage of Herald*, 322 P.3d 546 (Or. 2014) (*en banc*), where the Oregon Supreme Court approved a similar valuation method to the one proposed by Mack. The majority held:

> "Based upon the *Crook* holdings that (1) 'it is improper for a circuit court to consider Social Security benefits in equalizing a property distribution upon dissolution' [citation] and (2) Social Security benefits 'may not be divided directly or used as a basis for an offset during state dissolution proceedings' [citation], we decline to reverse the trial court's judgment for failing to apply the Social Security benefit offset to the value of Christopher's pension. Although the offset proposed by Christopher would (1) not require the court to consider the value of Shelley's Social Security benefits and (2) achieve a more equitable result, the offset would nonetheless 'cause[ ] an actual difference in the asset distribution.' [Citation.] We read *Crook* to prohibit such an outcome." 2014 IL App (4th) 130918-U, ¶ 24 (quoting *Crook*, 211 Ill. 2d at 449, 451).

Because the trial court did not err by refusing to make the offset in Mack's proposed valuation method, the majority stated that the trial court also did not err in excluding her report and testimony. *Id.* ¶ 25.

¶ 13    Justice Appleton dissented. He observed that the mandate of the Dissolution Act is to divide marital property in just proportions, and ignoring a substantial asset, like a Social Security benefit, that was earned during the marriage runs afoul of that mandate. *Id.* ¶ 31 (Appleton, J., dissenting). Justice Appleton would have reversed the trial court's decision and remanded, so the court could "reserve[ ] to the ex-wife her Social Security benefits but grant[ ] a corresponding offset of those benefits against the ex-husband's police pension." *Id.* ¶ 33.

¶ 14    We allowed Christopher's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2013).

¶ 15                                                    ANALYSIS

¶ 16    Here, as below, Christopher raises two issues: (1) whether the trial court erred in excluding Mack's report and testimony; and (2) whether the trial court erred in determining that the proposed valuation method violated federal law. Because our resolution of the second issue is dispositive, we address it first. Our standard of review is *de novo*. *Crook*, 211 Ill. 2d at 442.

¶ 17    The parties' arguments are not complex. Christopher argues that we should follow *Herald* and other out-of-state cases that have approved the valuation method proposed by Mack. He insists that that method comports with our holding in *Crook*. Shelley argues that we should reaffirm our holding in *Crook* and follow out-of-state cases that have rejected the valuation method proposed by Mack. While those two lines of cases inform our analysis, we must begin with a discussion of the Dissolution Act and the Social Security Act.

¶ 18    Section 503 of the Dissolution Act concerns "Disposition of property." Subsection (d) directs trial courts to "divide the marital property without regard to marital misconduct in just proportions considering all relevant factors." 750 ILCS 5/503(d) (West 2012). Subsection (a) defines marital property broadly as "all property acquired by either spouse subsequent to the

- 4 -

marriage" with certain exceptions. 750 ILCS 5/503(a) (West 2012). And subsection (b) echoes that definition by creating a presumption that "all property acquired by either spouse after the marriage and before a judgment of dissolution" is marital property. 750 ILCS 5/503(b)(1) (West 2012). Section 503(b)(2) specifically provides that pension benefits tied to contributions made during the marriage are marital property. See 750 ILCS 5/503(b)(2) (West 2012). Social Security benefits, however, are treated differently pursuant to federal law.

¶ 19    Section 402(b)(1) of the Social Security Act provides that divorced persons are entitled to specific portions of their former spouses' benefits. 42 U.S.C. § 402(b)(1) (2000). Section 407 provides that Social Security benefits are not otherwise alienable:

> "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407(a) (2000).

¶ 20    Section 407(a) imposes a broad bar against using any legal process to reach Social Security benefits. See *Crook*, 211 Ill. 2d at 443-44 (quoting *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 417 (1973)). Congress created an exception to that bar for litigation to enforce child and spousal support obligations (see 42 U.S.C. § 659(a) (2000)), but it explicitly omitted an exception for litigation to enforce obligations arising from the division of property in a divorce (see 42 U.S.C. § 659(i)(3)(B)(ii) (2000)).

¶ 21    That is the statutory framework we examined in *Crook*. In *Crook*, the husband participated in Social Security, but the wife did not. Instead, she accepted an early retirement incentive from a state college and participated in the State University Retirement System and Illinois Municipal Retirement Fund pension plans. The trial court awarded the husband half of the wife's pension benefits, but did not consider the husband's Social Security benefits. The wife appealed, and the appellate court reversed and remanded, directing the trial court to consider the husband's Social Security benefits in reaching an equitable division of property. The husband appealed to this court, and, on the issue of Social Security, we reversed.

¶ 22    The foundation for our decision was *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), where the Supreme Court held that retirement benefits under the Railroad Retirement Act of 1974 (45 U.S.C. § 231 *et seq.* (2000)) could not be subject to an attachment order or an offset award during state divorce proceedings. We observed that *Hisquierdo*'s preemption analysis applied equally to Social Security benefits. *Crook*, 211 Ill. 2d at 444-45 (citing, *inter alia*, *Olson v. Olson*, 445 N.W.2d 1, 6-7 (N.D. 1989)). We summarized that "*Hisquierdo* establishes two important points: Social Security benefits may not be divided directly or used as a basis for an offset during state dissolution proceedings." *Crook*, 211 Ill. 2d at 449-50. Those points led us to reject analyses from cases in other states permitting trial courts to consider anticipated Social Security benefits as a factor in making an equitable distribution of marital property. *Id.* at 449-51.

> "Instructing a trial court to 'consider' Social Security benefits, as the appellate court did in this case, either causes an actual difference in the asset distribution or it does not. If it does not, then the 'consideration' is essentially without meaning. If it does, then the monetary value of the Social Security benefits the spouse would have received is taken away from that spouse and given to the other spouse to compensate

for the anticipated difference. This works as an offset meant to equalize the property distribution." *Id.* at 451. Accord *Wolff v. Wolff*, 929 P.2d 916, 921 (Nev. 1996) ("Calling a duck a horse does not change the fact it is still a duck. 'Considering' [one spouse's] social security benefits does not change the fact that this is still an offset, and therefore, error.").

¶ 23    The valuation method proposed by Mack is not strictly speaking an offset, but it does consider the existence of Shelley's anticipated Social Security benefits to create parallel benefits for Christopher that would affect the division of marital property. That method violates the core holding of *Crook*. It is also inappropriate for two additional reasons—one related to the Dissolution Act and one grounded in policy.

¶ 24    First, "[p]ension benefits attributable to contributions made during the marriage are marital property" (*Crook*, 211 Ill. 2d at 442 (citing 750 ILCS 5/503(b)(2) (West 2000))), but Social Security benefits are not marital property under the Dissolution Act. As we noted in *Crook*, 211 Ill. 2d at 442, participants in the Social Security program do not have accrued property rights to their benefits. They have expectancies, or what the Supreme Court has termed "noncontractual interest[s]" (*Flemming v. Nestor*, 363 U.S. 603, 609-10 (1960)), in their benefits. Although the program is funded by contributions by participants over their working lives, they are never guaranteed to get out what they put into it because Congress has reserved the ability to alter, amend, or even repeal parts of the Social Security Act. See 42 U.S.C. § 1304 (1994); see also *Flemming*, 363 U.S. at 609-10 ("[E]ach worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation."). Unlike pension benefits, Social Security benefits are not "owned in any proprietary sense." *Manning v. Schultz*, 93 A.3d 566, 570 (Vt. 2014); see *Skelton v. Skelton*, 5 S.W.3d 2, 5 (Ark. 1999) ("Because the purposes of social security and [a pension-based] retirement plan are fundamentally different, they are not interchangeable."); *Cox v. Cox*, 882 P.2d 909, 920 (Alaska 1994) ("Social security benefits are not deferred compensation for services rendered but rather a governmental safety net for the retired. The employee has no contractual right to such benefits.").

¶ 25    If Social Security benefits are not property "acquired by" a spouse (750 ILCS 5/503(a) (West 2012)), then they are not marital property subject to division by the trial court. See *Wolff*, 929 P.2d at 920; *Litz v. Litz*, 288 S.W.3d 753, 758 (Mo. Ct. App. 2009); *Hayden v. Hayden*, 665 A.2d 772, 775 (N.J. Super. Ct. App. Div. 1995). And if Social Security benefits are not marital property, then surely hypothetical Social Security benefits, like those calculated by Mack, are not marital property and cannot be used to pare down the value of marital property. See *Reymann v. Reymann*, 919 S.W.2d 615, 617 (Tenn. Ct. App. 1995) ("If social security cannot be considered a marital asset, then the lack of social security should not be considered in reduction of marital assets."). To hold otherwise would be to ignore section 503(d), which instructs trial courts to divide only marital property. Second, as a matter of policy, any rule permitting trial courts to consider the mere existence of Social Security benefits without considering their value, and thereby violating federal law, is nearly impossible to apply. The difficulties stem from the vagueness of the term "consider" in this context, and reviewing courts have struggled to provide guidance on how to do so. See, *e.g.*, *Litz*, 288 S.W.3d at 758 (holding that Social Security benefits should be considered when dividing marital property, "but not to such a degree that such consideration would have a

material impact on the division of marital property"); *Biondo v. Biondo*, 809 N.W.2d 397, 403 (Mich. Ct. App. 2011) (holding that a trial court "may not treat social security benefits as tantamount to a marital asset," but may "take into account, in a general sense" the extent to which those benefits bear on the factors related to property division); *Johnson v. Johnson*, 734 N.W.2d 801, 808 (S.D. 2007) ("while a trial court may not distribute marital property to offset the computed value of Social Security benefits, it may premise an unequal distribution of property—using, for example, a 60-40 formula instead of 50-50—on the fact that one party is more likely to enjoy a secure retirement" (internal quotation marks omitted)). Even the Oregon Supreme Court in *Herald*, which the appellate court here called a "thoughtful decision" (2014 IL App (4th) 130918-U, ¶ 23) attempted to mitigate the consideration problem with still more considerations. After holding that a trial court, "within appropriate limits," may "consider the existence or absence of anticipated Social Security benefits for either or both spouses," the *Herald* court continued:

> "However, because what is just and proper under [the Oregon counterpart to section 503(d)] must be assessed in light of the prohibition against assignment or transfer of Social Security benefits in 42 USC section 407(a), three considerations merit particular emphasis. The first is whether it is probable that one or both spouses will receive Social Security retirement benefits in the foreseeable future. The second is whether the anticipated benefits are a substantial financial consideration when viewed in relation to the retirement assets and other financial resources that likely will be available to each spouse after the dissolution of their marriage. And, third and last, we reiterate that Social Security benefits are not marital assets, and their anticipated existence or absence therefore should be considered—if at all—only in achieving an overall just and proper division of the parties' property." *Herald*, 322 P.3d at 557-58.

The utility of such an "if at all" rule seems marginal, particularly in light of the real risk of crossing a line drawn by Congress.

¶ 26 Further difficulties plague the method here due to the uncertainties inherent in Social Security benefits. As we have noted, Congress's retained power to change the Act, and benefits themselves, making it "awkward for the courts to count benefits as assets of definable value." *Olson*, 445 N.W.2d at 6. That is, placing a present value on Social Security benefits is contrary to the nature of such benefits. Placing a present value on fictional benefits is even worse; it is rank speculation. Additionally, placing a present value on such benefits overlooks that the amount of Social Security benefits cannot be calculated until the participant collects them. *White v. White*, 664 A.2d 1297, 1300 (N.J. Super. Ct. 1995). Moreover, if the participant were to die before age 62, there would be no benefits at all. *Id.* Decreasing Shelley's share of Christopher's pension based on the present value of his hypothetical Social Security benefits that, even if he had participated in that program, he may not ever receive is both illogical and inequitable.

¶ 27 A more coherent approach is to adhere to *Crook*, and *Hisquierdo*, and hold that Congress intended to keep Social Security benefits out of divorce cases. Failing to consider Social Security benefits may paint an unrealistic picture of the parties' future finances, but "it is not the province of this court *** to interfere with the federal scheme, no matter how unfair it may appear to be." *Crook*, 211 Ill. 2d at 452. The decision of the trial court not to consider Shelley's Social Security benefits and reduce Christopher's pension benefits by hypothetical Social

Security benefits was correct.

¶ 28                                                    CONCLUSION

¶ 29        For the reasons that we have stated, we affirm the decisions of the lower courts and remand for further proceedings.

¶ 30        Appellate court judgment affirmed;

¶ 31        Circuit court judgment affirmed;

¶ 32        Cause remanded.

¶ 33        JUSTICE BURKE, dissenting:

¶ 34        Christopher makes a straightforward request in this dissolution of marriage case. Shelley, his former wife, is a participant in Social Security. Federal law mandates that the Social Security benefits to which Shelley is entitled may not be divided during the dissolution proceeding but must remain solely with her. Christopher, however, is not a participant in Social Security. His principal retirement benefit, a municipal pension, is considered marital property and is subject to division.

¶ 35        Given these facts, Christopher asks that the trial court be permitted to divide his pension in a way that would place him in the same financial position as Shelley. Specifically, Christopher proposes that a portion of his pension be retained for his benefit alone, with the remainder then apportioned between the parties. To establish how much of his pension he should retain, Christopher suggests that the trial court use the amount of Social Security benefits for which he would be eligible, if he had participated in that program. Stated otherwise, Christopher's request is simply that he be treated similarly to Shelley—no better and no worse—during the dissolution proceeding.

¶ 36        Christopher's proposed method for determining how to apportion his pension is consistent with section 503(d) of the Dissolution Act (750 ILCS 5/503(d) (West 2012)). That provision requires that marital property be divided "in just proportions considering all relevant factors" (*id*.), and it is difficult to conclude that an apportionment of property which places the divorcing spouses on an equal footing during the dissolution proceeding could be anything other than "just." The appellate court below made the same observation, noting that allowing Christopher's proposed division of his pension would achieve "a more equitable result." 2014 IL App (4th) 130918-U, ¶ 24. See also, *e.g.*, *In re Marriage of Dunlap*, 294 Ill. App. 3d 768, 778 (1998) (the touchstone of a just apportionment of property "is whether [the distribution] is equitable").

¶ 37        Nevertheless, the majority holds that the method proposed by Christopher for apportioning his pension may not, under any circumstances, be considered by a trial court. This is so, the majority concludes, because the proposed apportionment is preempted by section 407 of the Social Security Act (42 U.S.C. § 407(a) (2000)). I disagree.

¶ 38        The supremacy clause of the federal constitution provides that the laws of the United States "shall be the supreme Law of the Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Under the supremacy clause, federal law will preempt state law in three circumstances: "(1) express preemption—where

Congress has expressly preempted state action; (2) implied field preemption—where Congress has implemented a comprehensive regulatory scheme in an area, thus removing the entire field from the state realm; or (3) implied conflict preemption—where state action actually conflicts with federal law." *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 39-40 (2010).

¶ 39   There is no contention that federal law expressly prohibits Christopher's proposal or that Congress has preempted the field of dividing marital property. The type of preemption at issue in this case is therefore implied conflict preemption. The assertion is that Christopher's proposed division of his pension, if employed by a trial court, would constitute state action that would impermissibly conflict with federal law.

¶ 40   As the Supreme Court has stated, the regulation of domestic relations, including the distribution of marital property during dissolution proceedings, is traditionally the domain of state law. *Hillman v. Maretta*, 569 U.S. ___, ___, 133 S. Ct. 1943, 1950 (2013). For this reason, there is a "presumption against pre-emption" in the area of domestic relations law. *Egelhoff v. Egelhoff*, 532 U.S. 141, 151 (2001). Because preemption is disfavored in domestic relations law, it follows that the burden to establish conflict preemption in this area is high: it must be shown that the challenged state action does "major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law will be overridden." (Internal quotation marks omitted.) *Hillman*, 569 U.S. at ___, 133 S. Ct. at 1950. To determine what federal interest is at stake and whether it would suffer major damage if the state action were permitted, we look to the language of the relevant federal statute. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. ___, ___, 133 S. Ct. 1769, 1778 (2013) (statutory language provides the best evidence of Congress's preemptive intent).

¶ 41   Section 407(a) of the Social Security Act provides:

> "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407(a) (2000).

¶ 42   Section 407(a) addresses the rights of participants in Social Security to receive payments under the terms of that program. The section prohibits the transfer or assignment of Social Security benefits and prohibits the use of "legal process" to levy, attach, garnish or execute on those benefits. The section does not identify any other prohibited actions and does not say anything about how the pension of a nonparticipant in Social Security should be apportioned in a state dissolution proceeding. Thus, under the plain language of the statute, the federal interest established by section 407(a) is to ensure that Social Security benefits are received by the participant. No other federal interest is at issue.

¶ 43   Christopher's proposed division of his pension does not threaten Shelley's receipt of her Social Security benefits. Under Christopher's proposal, Shelley receives exactly what she is entitled to under the Social Security Act. In short, permitting the trial court to adopt the proposed apportionment would in no way stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Accordingly, the proposed apportionment of Christopher's pension is not preempted by section 407(a).

¶ 44    It is important to underscore the nature of the majority's holding to the contrary. The only reason Christopher is asking that he be allowed to retain a portion of his pension is so that he can be placed in a similar financial position as Shelley. It is this action which the majority finds prohibited by federal law. By finding conflict preemption in this case, the majority has thus concluded that treating divorcing spouses as equals in a state dissolution proceeding does "major damage to clear and substantial federal interests." There is simply no support for this conclusion in the language of section 407(a).

¶ 45    Although this is a conflict preemption case, the majority does not identify the federal interest at stake or explain why Christopher's method for apportioning his pension would do major damage to that interest. Instead, the majority's analysis rests solely on the assertion that allowing the apportionment proposed by Christopher would violate the "core holding" of *In re Marriage of Crook*, 211 Ill. 2d 437, 442 (2004). *Supra* ¶ 23. Again, I disagree.

¶ 46    The "core holding" of *Crook* was twofold. First, *Crook* held that Social Security benefits may not be directly divided in a dissolution proceeding. Second, relying on *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), *Crook* held that a trial court may not consider the amount of a participating spouse's Social Security benefits in order to calculate an offset. That is, the trial court may not take the monetary value of the Social Security benefits to which the participating spouse is entitled and give that amount of money "to the other spouse to compensate for the anticipated difference." *Crook*, 211 Ill. 2d at 451. This "type of 'consideration,' " we held, was impermissible. *Id*. Thus, as we succinctly stated, "Social Security benefits may not be divided directly or used as a basis for an offset during state dissolution proceedings." *Id*. at 449. These two actions are the only actions prohibited under *Crook*.

¶ 47    Christopher's proposed apportionment of his pension does not result in a direct division of Shelley's Social Security benefits. Nor does it create an offset, a fact which the majority itself acknowledges. *Supra* ¶ 23 (the proposed apportionment "is not strictly speaking an offset"). Christopher's proposed division of his pension is therefore not at odds with the "core holding" of *Crook*. Indeed, *Crook* expressly left open the question of how to treat a pension in a dissolution proceeding when the other spouse is a participant in Social Security. 211 Ill. 2d at 452; *supra* ¶ 1.

¶ 48    The majority also offers two policy reasons why Christopher's proposed method for valuing and apportioning his pension should not be permitted. Neither is persuasive.

¶ 49    First, the majority states that permitting the proposed apportionment would "ignore section 503(d) [of the Dissolution Act], which instructs trial courts to divide only marital property." *Supra* ¶ 25. With this statement, the majority appears to have concluded that Christopher's proposal is improper because, if adopted, the trial court would be dividing the amount of the hypothetical Social Security benefits used to establish how much of Christopher's pension should be retained, rather than dividing actual marital property. This is clearly incorrect.

¶ 50    If Christopher's proposal were adopted, the only thing the trial court would actually divide would be the pension. The hypothetical Social Security benefits would be used only as a measure to determine *how* the pension should be divided. Nothing in section 503(d) prohibits this. To the contrary, section 503(d) requires that marital property be divided "in just proportions considering all relevant factors" (750 ILCS 5/503(d) (West 2012)), in order to achieve an equitable result between the parties. Allowing Christopher to retain a portion of his pension, thereby placing him in a similar position as Shelley, accomplishes this goal.

¶ 51 The majority also observes that the future is unknown and there is always a possibility that Social Security benefits may, at some future time, change. From this, the majority concludes that Christopher's proposed apportionment, because it uses Social Security benefits as a measure for establishing how his pension should be divided, must be rejected as "rank speculation." *Supra* ¶ 26. This, too, is incorrect. No one can predict or guarantee the future. Pension systems, for example, can and do fail, drastically altering the financial positions of their participants. If the rule were that no financial factor may be considered in a dissolution proceeding if that factor may change in the future, then no pension could ever be divided. Obviously, this is not the case.

¶ 52 Further, Christopher offered expert testimony explaining how to calculate the amount of benefits for which Christopher would be eligible if he were a participant in Social Security. The majority does not contend that these calculations are mathematically incorrect and similar calculations are made as a matter of course in financial and retirement planning. The Social Security Administration itself provides the means for participants to calculate the amount of future benefits to which they are entitled in order to plan for retirement. See http://www.ssa.gov (last visited June 11, 2015). On this record, therefore, it is not speculation but fact: using Christopher's proposed apportionment would place him in the same position as Shelley.

¶ 53 The majority holds that, in dissolution proceedings such as this, Illinois trial courts are precluded from dividing pensions in a way that would clearly achieve "a more equitable result." 2014 IL App (4th) 130918-U, ¶ 24. There is no basis in law or policy for this holding. I must, therefore, respectfully dissent.

¶ 54 JUSTICE KARMEIER joins in this dissent.