2021 IL App (2d) 191027
No. 2-19-1027
Opinion filed January 19, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF | ) | Appeal from the Circuit Court |
| LOIS K. RIES, Deceased | ) | of Winnebago County. |
| | ) | |
| | ) | No. 16-P-367 |
| (James Ries and Joseph Ries, | ) | |
| Petitioners-Appellees v. | ) | Honorable |
| The Department of Healthcare and | ) | Donald P. Shriver, |
| Family Services, Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1   Respondent, the Department of Healthcare and Family Services (Department) had paid

medical expenses on behalf of the decedent, Lois K. Ries. Respondent now appeals the trial court's

decision barring its claim for those expenses against Lois's estate (the Estate), which is executed

by petitioners, James and Joseph Ries, her sons and heirs.

¶ 2   Specifically, pursuant to section 5-13 of the Illinois Public Aid Code (Code) (305 ILCS

5/5-13 (West 2018)), the Department brought a claim against the Estate to recover benefits it had

paid on Lois's behalf. The Estate, however, argued that the Department's claim was barred because

the Department had already settled a lien it had filed against the Estate pursuant to section 11-22

of the Code (*id.* § 11-22). The settled lien involved personal-injury litigation. The Estate argued,

and the trial court agreed, that, where the only funds remaining in the Estate derived from the

personal-injury lawsuit, the Department could not again recover from the same source of funds. The Department argues on appeal that the court's ruling was incorrect because its settlement concerned only personal-injury expenses, *not* the expenses that the Department had paid on Lois's behalf *prior* to the personal injury. For the following reasons, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      Lois was a public-aid recipient. The Department paid her medical expenses for almost 11 years: specifically, from October 5, 2005, until her death on July 17, 2016. In total, the Department paid on Lois's behalf $212,567.94 in medical benefits.

¶ 5      In November 2011, Lois's spinal cord was injured during an epidural injection, rendering her a quadriplegic. The Department paid her medical expenses related to the injury.

¶ 6      In January 2013, Lois filed a personal-injury lawsuit against the treating hospital and certain doctors. In August 2013, the Department, pursuant to sections 11-22 and 11-22b of the Code (*id.* §§ 11-22, 11-22b), asserted a lien against any potential recovery Lois obtained from the personal-injury litigation, seeking to recover expenses it had paid on her behalf that were specifically attributable to her tort injury. The Department noted that the amount of the lien could not yet be determined because it was still paying for Lois's medical treatment, including that resulting from her injury.

¶ 7      In July 2016, Lois died while the lawsuit remained pending. Consequently, the Estate was opened and it continued to prosecute the lawsuit, with James and Joseph serving as Estate executors. Critical here, the lawsuit was the Estate's sole asset.

¶ 8      In December 2016, the Department filed against the Estate a claim for the entirety of the medical expenses it had paid on Lois's behalf during her lifetime, *i.e.*, $212,567.94.

¶ 9 In 2018, the Estate sought to settle the lawsuit and approached the Department about reducing its claim. In short, the Department reduced its personal-injury lien from $124,679.63 to $20,000, and the lawsuit settled. Thereafter, the Department filed a modified claim against the Estate, reducing the claim from $212,567.94 to $87,929.87, to reflect that the expenses attributable to the personal injury had been satisfied by virtue of the settlement.

¶ 10 Apparently in response to the modified claim, the Estate, in June 2019, filed a petition to adjudicate the Department's claim under section 11-22 of the Code. The Estate asserted that, because various lienholders, including the Department, had reduced their claims related to the personal injury, the lawsuit had settled for $415,000. Further, having paid the lawsuit expenses, the remaining $80,819.04 was to be distributed to James and Joseph. The Estate argued that the Code did not authorize the Department to recover twice from the same settlement pool of money, and it claimed that it did not know that the Department would seek reimbursement for the amounts it had paid for Lois's medical care prior to her injury. The Estate further argued that, if the court determined that the Department was entitled to recovery for preinjury medical expenses, those expenses should be reduced to $14,068.78, to reflect an offset for the Department's fair share of the attorney fees that had been expended to obtain the personal-injury award.

¶ 11 In response, the Department argued that it had agreed to settle only its claim for reimbursement for the medical expenses related to Lois's injury and that its acceptance of $20,000 for those expenses did not act to extinguish its claim for the expenses it paid for her *preinjury* care. The Estate replied that the Department should not be allowed to assert a second claim on the same settlement proceeds and that, had it known that the Department would do so, the Estate would not have settled the personal-injury lawsuit.

¶ 12   At oral argument on the petition, the Estate argued that "the only reason" it settled the personal-injury lawsuit was its understanding that the Department would be taking only $20,000 from the "medical malpractice pot." The Department's counsel disputed this understanding, commenting, "I think what our disagreement with [the Estate's)] counsel would be [is] that there wasn't ever a representation that we were going to settle our entire claim. Only that we were going to settle our personal-injury [claim]." The Estate's counsel disagreed:

> [THE ESTATE'S COUNSEL]: "And I could get you the letter, Judge. I mean, I, I can remember the conversation I had with Kevin Thornton [(presumably a Department representative)]. I called Kevin, I've known Kevin for years. I've dealt with many, many cases and I said, Kevin, look, here's the deal. I have this medical malpractice case. You've sent me your itemization and you're telling me I've got problems with this case. There's a *serious causation problem* in this case. I need help from Medicare and I need help from you, otherwise we're going to go to trial and *we're going to lose*. *** That's what happened and then he, he sent me a letter *saying the personal injury lien is settled* for—" (Emphases added.)

¶ 13   The referenced letter, dated May 21, 2018, from the Department to the Estate's counsel, reads as follows:

> "Dear MEYERS & FLOWERS
>
> In follow up to your recent inquiry, this letter will confirm that the Department has a lien in the amount of $124,679.63, and the Department is willing to accept $20,000.00, in settlement *for the injuries related to the accident of November 23, 2011. If my understanding is incorrect, please contact me*.

Please make your remittance payable to the Illinois Department of Healthcare and Family Services, please reference the above captioned information, and forward to the attention of the undersigned at the above address. Thank you for your cooperation." (Emphasis added.)

¶ 14 On August 21, 2019, after hearing argument and reviewing the letter, the court entered judgment in the Estate's favor on the petition to adjudicate the claim. The court explained that it understood the Department's position that both sections 11-22 and 5-13 of the Code allowed it to pursue claims for reimbursement from public-aid recipients, but it commented that the "specific" statutory section (*i.e.*, section 11-22) controlled over the "general" section (*i.e.*, section 5-13). The court did not agree that the balance remaining from the Department's total claim, *i.e.*, $87,000, could attach to the personal-injury settlement funds, from which the Department had already accepted a negotiated and compromised figure of $20,000. The court explained that, if the Estate had possessed items such as life insurance, real estate, or "gold bricks," it could envision the Department attaching a lien to those funds. However, the funds in the Estate were comprised solely of "[s]ection [11-]22, cause of action funds, that came into the [E]state and are wholly and 100 percent traceable to that action that you asserted your lien on probably under [section] 22 and then apparently compromised on that, that [$]20,000." Accordingly, the court found that the Department was seeking to take a "second bite at the same fund apple." It entered an order:

"Pursuant to 305 ILCS 5/11-22[,] the lien asserted by [the Department] in the amount of $87,929.87 does not attach to the settlement funds for the Ries medical malpractice settlement that are now in the [E]state because these funds are traceable to the personal injury settlement and [the Department's] lien on these funds was already compromised in full for $20,000."

¶ 15    The Department moved the court to reconsider. It argued that section 11-22 applied only to liens filed on personal-injury settlements and did not operate to defeat a claim for preinjury medical expenses. It explained that federal law required it to assert a claim for the paid medical expenses unrelated to the personal-injury action (42 U.S.C. § 1396p(b) (West 2018)), as did the Code (305 ILCS 5/3-9, 5-13 (West 2018)).

¶ 16    On October 28, 2019, the court denied the motion to reconsider. It again characterized the Department's efforts as "double-dipping," because the Department "dipped in *** on the pot one time in order to get a pot to begin with and then when it got into the decedent's estate, now, you're grabbing on it again *** on the exact same source of funds." Further, the court again noted that the Estate did not have a "different source of income," such as stocks, artwork, or retirement funds, and that it could not understand the justice of allowing the Department to twice grab ahold of the funds. The court reiterated that it did not know how it could "in good conscious [*sic*], fairness, justice, equity or a fair reading of the statutes say that the State can compromise a claim so that money can be [*sic*] into an estate so they can then reassert the balance of their claim on the exact same source of funds." Moreover, the court focused on the fact that the personal-injury settlement resulted from efforts expended by the Estate and that the Estate had to get approval to settle the lawsuit:

>    "which means everybody had to have notice of what was potentially going to be the settlement amount. You were involved in there as the State agency with your claim and agreed to an amount so that those funds could then be approved and, ultimately, have a net value that would then go into the Estate. I think the time to assert all the liens had to be at that point before they pass through into the Estate because it's not like, I mean, I can see your argument 100 percent if the Estate had a different source of income coming into it. If

you are asserting a lien on artwork or stocks or retirement, you know, some sort of a new—whatever the source of funds were that were outside and separate and apart from this settlement that you're already got paid on I have no problem with that. *** But if we're tracing the funds, where did they come from? They came from a source of funds that you were involved with that you okayed in terms of a compromise that the Court okayed and then said this is the ultimate net amount that is going to go into the Estate from this settlement that you've already gotten paid on. I don't think you can then reattach it seems—there's just no justice there in reading the statute if you're allowed to grab a hold of the funds twice ***."

¶ 17    The court granted the Department's emergency motion to stay distribution of the Estate. The Department appeals.

¶ 18                             II. ANALYSIS

¶ 19    The Department frames its issues on appeal as twofold; first, whether the court improperly ruled that the Code requires the Department to choose between recovering benefits paid out as a result of an injury or, instead, benefits paid preinjury; and second, whether the court improperly ruled that, because the Estate's remaining funds derived solely from the personal-injury lawsuit, the Department's settlement of its lien against the lawsuit (filed pursuant to sections 11-22 and 11-22b of the Code) served to defeat its claim against the Estate (filed pursuant to section 5-13 of the Code) for the medical assistance it provided to Lois unrelated to her injury.

¶ 20                    A. Relevant Statutory Provisions

¶ 21    We first summarize the two sections under which the Department imposed its lien against the personal-injury lawsuit. Specifically, section 11-22 provides that the Department "*shall* have a charge upon all claims, demands *and causes of action for injuries* to an applicant for or recipient

of" financial aid under the Code for the total amount of medical assistance provided to the recipient *"from the time of injury to the date of recovery upon such claim, demand or cause of action."* (Emphases added.) *Id.* § 11-22. Upon providing proper notice of the charge, the Department "shall attach to any verdict or judgment entered and to any money or property which may be recovered on account of such claim, demand, cause of action or suit from and after the time of the service of the notice." *Id.* Also, upon request, "[t]he court may determine what portion of the recovery shall be paid to the injured person and what portion shall be paid to the *** Department." Further, "[i]n making this determination, the court shall conduct an evidentiary hearing and shall consider competent evidence pertaining to" numerous matters, such as the amount of the charge when expressed as a gross percentage of the recovery and the attorney fees incurred and paid by the recipient. *Id.* However, the party seeking to reduce the amount of a proven charge against recovery bears the burden of establishing sufficient evidence for the court, in its discretion, to reduce the charge. *Id.* The Department "shall pay its pro rata share of the attorney fees based on [its] lien as it compares to the total settlement agreed upon," and the Department's lien takes priority over all but attorney-fee liens. *Id.*

¶ 22    Second, section 11-22b provides that, as used within the section, a "[b]eneficiary" is a person (or an estate) who received benefits under the Code "because of an injury for which another person may be liable." *Id.* § 11-22b(a)(2). The Department "shall have a right to recover" the reasonable value of the benefits provided, but it may compromise or settle and release any such claim for benefits provided; or it may "waive any such claims for benefits provided under this Code, in whole or in part, for the convenience of the Department or if the Department determines that collection would result in undue hardship upon the person who suffered the injury or, in a wrongful death action, upon the heirs of the deceased." *Id.* § 11-22b(b)(1), (b)(2). Section 11-22b

also contemplates that the Department will pay its *pro rata* share of attorney fees or litigation expenses for any recovery (*id.* § 11-22b(c)(4), (e)), and it concludes:

> "Except as otherwise provided in this Section, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the Department's claim for reimbursement of the benefits provided and any lien filed pursuant thereto to the same extent and subject to the same limitations as in Section 11-22 of this Code." *Id.* § 11-22b(i).

¶ 23    As noted, the Department also asserted a claim on noninjury-related expenditures pursuant to another Code provision. Specifically, the Department asserts that it was entitled to claim recovery for payments made on Lois's behalf *before* her injury, under section 5-13. *Id.* § 5-13. Section 5-13 provides, in relevant part, that the amount of public aid expended on behalf of a person age 55 or older "shall be a claim against the person's estate" and that "[t]he term 'estate', as used in this Section, with respect to a deceased person, means all real and personal property and *other assets* included within the person's estate." (Emphasis added.) *Id.* Moreover, section 5-13 requires that the claim be recorded or filed as a notice of lien and, further, that "[a] claim arising under this Section attaches to interests owned or subsequently acquired by the estate of a recipient or the estate of a recipient's surviving spouse." *Id.*

¶ 24    Finally, at oral argument in this case, the Department directed our attention to section 18-14 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/18-14 (West 2018)), which provides that, generally, claims against an estate are chargeable against all personal and real property within the estate, "without distinction."

¶ 25                                B. Standard of Review

¶ 26    The parties agree that, to conclude that the lien settlement precluded further recovery, the trial court applied law to established facts. As such, the judgment on appeal concerns questions of law, to be reviewed *de novo*. See, *e.g.*, *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 39 (2010) (questions of statutory interpretation are reviewed *de novo*).

¶ 27    When interpreting statutes, we must ascertain and give effect to legislative intent, and we must presume that the legislature did not intend absurd results. See, *e.g.*, *In re Estate of Wilson*, 238 Ill. 2d 519, 561 (2010); *In re Marriage of Best*, 228 Ill. 2d 107, 116 (2008). "The best indicator of the legislative intent is the language in the statute, which must be given its plain and ordinary meaning." *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 16. We must not interpret a statute in a manner that renders other statutory provisions meaningless (see, *e.g.*, *Wilson*, 238 Ill. 2d at 561), nor may we read into statutes exceptions, limitations, or conditions that the General Assembly did not express (see *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 230 (2006)).

¶ 28                      C. Department's Right to Pursue Claim

¶ 29    The Department argues that the court improperly applied the Code's provisions to bar its claim for reimbursement for the medical expenditures it made on Lois's behalf prior to the injury that formed the basis of the personal-injury claim and settlement. Specifically, the court looked at section 11-22, the provision addressing claims attaching to personal-injury actions, as being "specific" and, therefore, as somehow precluding the Department's claim under the more "general" section 5-13 for expenditures unrelated to and that predated the injury. The Department explains that its claim against the Estate was created by statutory mandate, noting that the benefit program works in a federal-state partnership and that federal law requires states to pursue from recipients' estates recovery of paid medical benefits. See, *e.g.*, 42 U.S.C. § 1396p (West 2018)

(titled "Liens, adjustments and recoveries, and transfers of assets" and providing that, in certain scenarios, the State "shall" seek adjustment or recovery of medical assistance correctly paid from the individual's estate). Accordingly, the Department argues, section 5-13, which, again, provides that the amount expended on a recipient's behalf "shall be a claim against the person's estate," is the avenue by which the State (with exceptions not relevant here) pursues reimbursement. See 305 ILCS 5/5-13 (West 2018).

¶ 30     The Department notes that, after Lois's 2011 injury, it placed a lien on any potential recovery from her personal-injury lawsuit but could not specifically quantify the lien amount, because her treatment, and the Department's payments, remained ongoing. Upon her death in 2016, however, the Department quantified that the amount of medical assistance it paid both preinjury and postinjury totaled $212,567.94, and, by virtue of its authority under section 5-13, it filed against the Estate a claim in that amount. It also then calculated that the personal-injury lien comprised $124,679.63 of the total. According to the Department, as it possessed authority (under section 11-22b(b)(2)) to compromise or settle its lien attached to the personal-injury action, and, as that section provides that its recovery thereunder should be reduced by an amount representing a reasonable share of the attorney fees and costs (section 11-22b(c)(4), (e)), it reduced its personal-injury lien by 84% and accepted $20,000 for settlement. See *id.* § 11-22b(b)(2), (c)(4).

¶ 31     The Department argues that nowhere does the Code provide that recovery from third parties for expenses paid on account of tortious injury in any way precludes recovery from a decedent's estate for other medical assistance paid throughout his or her lifetime. The Department also notes that the two separate Code provisions, in some cases, work in tandem, because the recipient of an injury might *survive* and need to maintain a portion of the personal-injury settlement or award to defray costs of continued care. In that case, upon his or her death, if money remained in the estate,

the Department would then be obligated to pursue a claim for recovery. The fact that Lois died prior to the resolution of her lawsuit, the Department urges, has no effect on the Department's statutory obligation to seek recovery of its expenses under both mechanisms. Thus, the Department disputes that its claim for expenses paid prior to Lois's injury is barred merely because the remaining funds in Lois's estate derived only from the personal-injury settlement. The Department describes the undesirable consequences of the court's ruling:

"In the case of a recipient who dies *after* receiving her personal[-]injury award, it would preclude the Department from recovering medical expenses from her estate, for those funds would be, as the circuit court stated, 'traceable' to the personal[-]injury settlement. Indeed, in such a case, the personal[-]injury award would typically be the Medicaid recipient's only asset; if the individual possessed property such as the 'gold bricks,' a hypothetical to which the circuit court assigned significance, that person would be ineligible for medical benefits in the first place." (Emphasis in original.)

The Department argues that the court's ruling here acts to rewrite the statutes, imposing upon the Department restrictions and qualifications that do not exist.

¶ 32    Further, the Department notes that it would have been *unlawful* for it to pursue the *entire* amount of benefits paid ($212,567.94) in connection to the lawsuit settlement, as a third party was not *responsible* for the preinjury expenses. Thus, it contends, to hold that its settlement for the injury eviscerated its claim for expenses not related to the injury is incorrect. Finally, the Department contends that the court's ruling here undermines public policy, in that it results in taxpayers absorbing the entire cost of Lois's preinjury care while allowing persons outside the statute's protections (*i.e.*, her two adult children, neither of whom has alleged or established a disability (see *id.* § 5-13)) to receive the entirety of the Estate. It notes that the Estate has not

disputed that the Department's motivation for seeking recovery is one for the public benefit, as any shortfalls in the public-aid program must be paid from the State's general revenue fund, meaning that taxpayers are ultimately liable for unreimbursed payments.

¶ 33     In response, the Estate contends that the trial court correctly determined that the Code does not authorize the Department to assert two claims against the same personal-injury proceeds. It reiterates that the $80,819.04 remaining in the Estate is from the lawsuit settlement. The Estate notes that the Department had already asserted a claim against the settlement under section 11-22 of the Code and that it resolved that claim for $20,000. Therefore, the Estate contends, "nothing in any other provision of the Public Aid Code *or equity* allowed the Department to assert a second claim on these same proceeds." (Emphasis added.) Further, the Estate agrees with the trial court's conclusion that, "[w]hile section [5-13] applied to any Estate funds that were not traceable to the [l]awsuit proceeds, nothing in section [5-13] allowed the Department to get a second bite of the [l]awsuit proceeds." Indeed, the Estate focuses heavily on the Department's alleged attempt to take a "second bite" from the same source of funds. For the following reasons, we disagree with the Estate's position, which is derived almost exclusively from its perception of "fairness," as opposed to statutory interpretation.

¶ 34     First, the Estate contends that nothing in the Code entitles the Department to twice recover from the same source of funds. However, to the contrary, nothing in the Code *precludes* recovery from the same source of funds. While fairness would dictate against a double *recovery*, there is no question that the Department is *not* seeking double recovery. It has very clearly separated preinjury and postinjury claims, seeking reimbursement from the lawsuit only those expenses that it had paid on account of third-party liability. The Estate's argument that the Department cannot obtain reimbursement for *other* expenditures it made on Lois's behalf, simply because the Estate's sole

remaining asset is the funds remaining from the settlement, lacks support. Indeed, the Estate does not point us to any statute prohibiting the Department's claim against the Estate for expenses it paid for six years *prior* to Lois's injury. Further, the Estate's logic fails in view of the Department's hypothetical (*supra* ¶ 31) wherein a public-aid recipient survives following a personal-injury litigation settlement but remains eligible for public aid, such that the Department continues to pay for his or her care until death. At that point, and as the Estate essentially conceded at oral argument, it would be nonsensical to assert that the Department would be precluded from seeking, pursuant to section 5-13, recovery against the Estate for the postinjury, postsettlement expenses that it paid on the recipient's behalf, simply because the source of the Estate's remaining funds were tied to the litigation settlement, from which the Department had earlier accepted a portion to reimburse entirely different expenses. Again, absent a clear settlement or a global release (which we lack here, as discussed below), the source of the funds in the Estate appears to be irrelevant, as section 18-14 of the Probate Act provides that, generally, claims against an estate are chargeable against all personal and real property within the estate, "without distinction." 755 ILCS 5/18-14 (West 2018). Money is fungible and interchangeable, regardless of its source. Moreover, we agree with the Department that neither section 11-22 nor section 5-13 is more specific than the other; rather, they apply to different situations. Finally, the trial court's theory that the Department could pursue its section 5-13 claim here only if the Estate had contained *other* assets is an impractical distinction, as this issue concerns a person requiring public aid and, thus, unlikely to possess significant other assets in the first place.

¶ 35    Second, because the Estate cannot point to any statute to support its claim, we return to the notion of equity and the Estate's contentions that it would not be fair for the Department to twice attack the same source of funds and that it did not subjectively understand that the Department's

settlement of the personal-injury lien did not include all expenditures made on Lois's behalf. The Estate argues that the Department's claim should be barred by estoppel, because the Estate reasonably relied upon the Department's representation that it would "accept $20,000 to satisfy its claim on the lawsuit proceeds." We disagree. To use the Estate's own words, the Department *has* upheld its representation that it would "accept $20,000 to satisfy its claim on the lawsuit proceeds," *i.e.*, the claim, as written in the letter, for $124,670.63. The Estate contends that it did not know that the Department was *also* asserting a claim under section 5-13, but, for the following reasons, the record belies this assertion.

¶ 36    First, in December 2016, the Department filed against the Estate a claim for medical assistance totaling $212,567.94.[1] Then, in May 2018, in apparently the only document that reduced to writing the parties' understanding, the Department wrote to the Estate's counsel:

> "In follow up to your recent inquiry, this letter will confirm that the Department has a lien in the amount of *$124,679.63*, and the Department is willing to accept $20,000.00, *in settlement for the injuries related to the accident of November 23, 2011. If my understanding is incorrect, please contact me*." (Emphases added.)

---

[1] We note that the Estate points out that the Department's filed claim document cited only section 10-13.4 of the Code (305 ILCS 5/10-13.4 (West 2018)) and no other authority. However, this is of no import. Section 10-13.4, titled "Proof of Records," pertains to the authenticity and admission of Department documents. See *id.* It is reasonable to presume that the Department cited section 10-13.4 to support its claim attachment, which consisted of numerous pages of documents reflecting payments made on Lois's behalf.

This letter clearly settles only the lien amounts claimed in relation to the injury. The Estate's counsel apparently never communicated, per the letter's request, that the Department's understanding was incorrect. Accordingly, despite the Estate's claim that it lacked knowledge, nothing in the letter suggests that the agreed settlement included the Department's claim for amounts unrelated to the injury, and we again note that the Estate was aware in 2016 of the Department's claim for *more* than the $124,679.63 referenced in the letter. We also note that the Estate does not respond to the Department's point that it *could not* have sought reimbursement for its entire claim, including that now pursued under section 5-13, from the personal-injury settlement: not all of the payments it made on Lois's behalf over the 11-year period were tied to the injury. Thus, while perhaps, in another circumstance, the Department could negotiate a global settlement that has the effect of releasing a section 5-13 claim, there is no evidence that, by accepting the personal-injury settlement funds, it did so here. We emphasize again that the *only* document in the record regarding settlement of the personal-injury lien and the alleged scope of the Department's compromised claim is the above-quoted letter.

¶ 37 The Estate's suggestion that, had it known that the Department would pursue a claim for preinjury expenditures, it never would have settled the lawsuit, is also belied by the Estate's counsel's own comments to the trial court. Preliminarily, counsel stated that the Department "sent me a letter saying *the personal injury lien is settled*" (emphasis added), again refuting the notion that the Estate did not understand the scope of the Department's settlement. Further, as to the Estate's motivation for the settlement, counsel explained that he called the Department to explain that settlement was necessary because recovery at trial was unlikely, due to a lack of proof on an essential element of the cause of action. The impetus for the settlement was, thus, a lack of proof,

so the suggestion that, if it had not subjectively misunderstood the scope of the Department's compromised claim, it never would have settled the lawsuit, is specious.

¶ 38    The trial court commented that the Department knew that the Estate made efforts to obtain a settlement and was aware of the figure for settlement. On appeal, the Estate again asserts that the only reason that any lawsuit proceeds existed was because the Department and other lienholders agreed to compromise their claims on the proceeds and that, thus, "[h]aving represented to the Estate that its claim on the [l]awsuit proceeds would be fully satisfied for $20,000.00, the Department is prevented by *equity and fairness* from asserting a second claim on the same proceeds." (Emphasis added.) It contends that there is no public-policy problem, because no settlement would have resulted in no money at all, and $20,000 to the Department is better than zero.

¶ 39    We do not understand why the Department's knowledge of the settlement process and compromise of its personal-injury lien should consequently impact its ability, under these particular facts, to seek recovery for benefits totally unrelated to the personal-injury claim. Again, the Estate's argument is couched in terms of fairness and equity, not statutory interpretation, and, in any event, we fail to see the inequity here, except for that being borne by the Department and, more specifically, taxpayers. Again, the Estate has explained that it was also in its own interest to settle, due to a lack of proof to support the lawsuit. As the Department notes, it accepted via settlement a reduced figure for the amount it spent for the injury inflicted upon Lois by third parties. For six years prior to that injury, however, it paid medical benefits to Lois by virtue of her need for public aid. She had no assets and no other property in her Estate. The Code allows the Department to seek recovery from litigation concerning third-party malfeasance (section 11-22),

but it also obligates the Department to seek recovery for the expenses paid prior thereto (section 5-13), which would otherwise be borne by the general fund, *i.e.*, taxpayers.

¶ 40     We also reject the Estate's alternative argument that the Department should reduce its claim to offset its *pro rata* share of attorney fees that were expended in the personal-injury action. Preliminarily, this argument is premised in sections 11-22 and 11-22b, which, as we summarized above, both contemplate the Department paying a *pro rata* share of attorney fees expended by the public-aid recipient or an estate to obtain recovery through litigation. Those sections also contemplate that, upon application, the trial court may reduce the Department's recovery percentage, based upon several factors. This makes sense, as recovery under those sections is tied to things like litigation, which gives rise to attorney fees, and also because the aid recipient might be alive and require a greater portion of the recovery for continued living expenses. The same does not hold true, however, for section 5-13. Rather, section 5-13 does not contemplate litigation or a surviving recipient, as it concerns claims against an estate and the estate's assets. There are no provisions in section 5-13, which is the section under which the Department brings its remaining claim here, concerning offsets or reductions, as there is nothing to offset against. Moreover, as to the claim that the Department did bring under sections 11-22 and 11-22b, it reduced that claim by 84%, and the Estate, which, under section 11-22b, bore the burden of seeking any further reduction of that recovery for attorney fees, did not do so. The Estate concedes that the costs and attorney fees related to the litigation were paid from the settlement. Thus, we agree with the Department's position, particularly in light of no contradictory action taken by the Estate, that it has already shared in the procurement costs by significantly compromising its postinjury lien.

¶ 41     In sum, there is no support in the Code, case law, or equity for the trial court's decision that the Department was foreclosed from pursuing a claim against the Estate for expenses paid on

Lois's behalf before her injury, merely because the sole asset in the Estate was comprised of settlement funds from the personal-injury action in which the Department accepted a reduced amount for its lien related to that injury. The Department's settlement of one claim, *i.e.*, the lien related to the personal-injury expenses, was clear; the record reflects that the Estate understood the claim for what it was and the letter reducing to writing the parties' agreement clearly settled only those expenses related to the lawsuit. The Estate did not challenge that document as inaccurate. Nor could the Department have encompassed into the personal-injury settlement its claims for expenses not related to the injury. As the Estate accepted the Department's 84% reduction of its personal-injury lien without seeking from the court any other adjustment pertaining to the Department's *pro rata* share of attorney fees for the litigation, we presume that the reduction included attorney-fees contribution. We reverse and remand.

¶ 42                                    III. CONCLUSION

¶ 43    For the reasons stated, the judgment of the circuit court of Winnebago County is reversed and the cause is remanded.

¶ 44    Reversed and remanded.

---

**No. 2-19-1027**

---

| | |
|---|---|
| **Cite as:** | *In re Estate of Ries*, 2021 IL App (2d) 191027 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 16-P-367; the Hon. Donald P. Shriver, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Valerie Quinn, Assistant Attorney General, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Craig D. Brown, of Meyers & Flowers, LLC, of St. Charles, and David R. Nordwall, of Law Office of David R. Nordwall LLC, of Chicago, for appellees. |

---